## E. G. RIDGELY, Adm'r, v. SCOTT BENNETT et al.

1. PLEADINGS AND PRACTICE. *Mere irregularities will not affect sale.* If a superior court have jurisdiction of the subject-matter and the parties, mere irregularities in the exercise of that jurisdiction will not render the proceedings void, nor, upon a writ of error, affect the validity of sales of property made in the cause to innocent third persons.

2. SAME. *Sale of land to pay debts. Administrator.* The Code, section 2267, *et seq.,*authorizing personal representatives to file petitions for the sale of land to pay debts, does not require the creditors of the estate to be made parties, nor a report of the debts and assets as a preliminary to the exercise of jurisdiction; nor is it any objection that upon taking the account with the administrator he may be found to have personal assets in his hands; and premature action may be validated as to purchasers by a failure to appeal, and subsequent recognition by the court of what has been done.

3. SAME. *Same. Guardian ad litem.* The proceedings in such a case are not avoided upon a writ of error, as to purchasers by the omission of the name of one of several infant defendants in the order appointing the guardian *ad litem,* if the answer be in the name of all,

Ridgely *v.* Bennett.

and repeatedly recognized by the court as their answer. The appointment of the guardian *ad litem* need not be renewed upon the filing of an amended and supplemental petition, and the failure of the guardian to swear to a mere formal answer is immaterial.

4. SAME. *Same. Rights of purchasers.* If the errors complained of do not avoid the proceedings as to third persons, the court will not reverse the decrees for such errors so as to cast a cloud upon the rights of purchasers.

FROM GIBSON.

Appeal in error from the Law Court at Humboldt. J. T. CARTHEL, J.

JOHNSON & SHARP for Ridgely.

L. L. HAWKINS for Bennett.

COOPER, J., delivered the opinion of the court.

Proceedings by petition in the Law Court at Humboldt, under the Code, section 2267, *et seq.*, by an administrator to sell lands for the payment of debts. The petition was filed October 16, 1871, and the case brought before us by writ of error sued out by the heirs on April 10, 1884.

R. K. Porter died in 1870, intestate, leaving a wife and five children. George S. Reiney was appointed and qualified on January 1, 1871, as administrator of the intestate's estate. He filed his original petition in the following October against the widow and heirs, upon whom process was duly served. The petition was taken for confessed against the widow, and it seems that she has since died. Upon motion of the complainant, W. I. McFarland, an attorney of

the court, was appointed guardian *ad litem* for four·
of the heirs, naming them, it being shown that they
were under age, and had no regular guardian.   The
petition alleged that the five heirs were infants, but
the name of one of, them, Mary Porter, now the wife
of Scott Bennett, was not included in the order ap-
pointing the guardian *ad litem*.   An answer was, how-
ever filed, in the name of all of the five heirs by
W. I. McFarland as their guardian *ad litem*.   The
answer was not sworn to.   On February 13, 1872,
another petition was filed by the administrator against
the heirs, stating the death of the widow, asking for
the sale of other lands of the estate to pay debts.
Process issued on this petition and was served upon
the heirs.   An answer was filed in the name of all
the heirs by W. I. McFarland, as their guardian *ad
litem*, without any new order of appointment.

The original petition alleged that the administrator
had received available assets to the amount of $——,.
and· had applied them all to the payment of the
debts and liabilities of the estate, leaving *bona fide*
debts unpaid to the amount of about $2,460.   These
debts are then set out by the names of the creditors
and the amount due each.   The lands sought to be
sold were fully described.   On November 9, 1871, the
cause was referred to the master, by a general order
without any recitals, to take an account of the per-
sonal assets that came or ought to have come into
the hands of the administrator, and what disposition
he had made thereof; and to take proof and report
the amount of debts outstanding and unpaid against

Ridgely v. Bennett.

the estate, and whether it was necessary to sell any or all of the land for the payment of debts. The clerk was required to report to the same term. On the next day, the clerk, in the presence of the guardian *ad litem*, and the petitioner's counsel, took the deposition of the administrator upon the matters of reference. The administrator testified that he had received as personal assets a note on a person named for $350, and held the notes of various parties given for property sold by him as administrator amounting to $1,168.80, all these notes being payable on the 25th of the succeeding December. That the *bona fide* debts would amount to $3,500, and he set out specifically the debts mentioned in the petition. He added that it was necessary to sell the real estate or a sufficiency thereof to pay the debts. The clerk reported the facts accordingly, and on the same day the report was, without exception confirmed. The decree of confirmation recited that the cause came on to be heard upon the petition, order *pro confesso,* answer of guardian *ad litem*, interlocutory order, proof and report. It further recited the death of the intestate, the names of his widow and children, and the qualification of the administrator as hereinbefore stated. It also recited that it appeared to the court that the personal assets which had come to the hands of the administrator amounted to $1,518.80, and that the indebtedness of the estate amounted to $3,500 to $4,000, and that the intestate died seized of certain lands described, and "that it will be necessary to sell a portion or all of said land to pay the indebtedness of the estate." It

was thereupon decreed that the clerk sell so much of the land as would be necessary to pay said indebtedness, prescribing the terms of sale.

On November 11, 1872, the clerk retook the deposition of the administrator in the presence of the guardian *ad litem* and the solicitor of the petitioner. He deposed that there were *bona fide* unpaid debts and liabilities of the estate to the amount of about $4,000; that a large part of the personal assets had been paid out . on just debts; that the remaining assets, and proceeds of lands sold would fall far short of paying the debts, and that it was necessary to sell the other lands to pay debts. On November 15, 1872, a decree was rendered, reciting that the cause came on to be heard " upon the amended petition, answer of the guardian *ad litem* and proof," when it appeared that the administrator had exhausted all the personal effects that came or should have come to his hands in the payment of *bona fide* debts and charges; that the real estate already sold by decree will fall far short of paying the remaining debts and charges, etc. The clerk was thereupon ordered to sell the land described.

On March 11, 1873, a decree was rendered confirming sales of land made on January 27, and May 18, 1872, under the decree of November 10, 1871, and divesting and vesting title accordingly. At the same time the clerk made a report of sales under the decree of November 11, 1872, and of offers to advance the biddings, which offers were accepted by the court, and titles divested and vested accordingly. The

decree made a reference to the clerk to take proof and report what would be a reasonable fee for the solicitor of petitioner, and also for the guardian ad litem.

On July 10, 1873, the clerk was directed to report the amount of personal assets in the hands of the administrator not disbursed, the debts of the estate unpaid, the real estate sold by order of the court, the amount in the hands of the clerk realized from the sales, and the amount still due on the sales. Following this order, the transcript contains a report of the administrator, and then a report of the clerk. These reports show that the administrator received personal assets to the amount of $1,415.61 and had disbursed the sum of $1,942.24; that the debts unpaid, as far as known to the administrator, excluding costs and counsel fees, were $3,230.48; that the whole amount of indebtedness, as far as known, was $5,183.72; that the proceeds of land sales were $3,608.54, and of sales and personalty $5,024.15. That there is a deficiency of asssets to pay debts of $159.57, to which must be added costs and counsel fees. On July 18, 1873, a decree was rendered, reciting that it appeared from the clerk's report that the personal assets and proceeds of land sales were insufficient to pay debts of the estate and costs, the former orders of sale were revived. At the same term, a report was confirmed allowing the solicitor of petitioner a fee of $350, and the guardian ad litem $25. The residue of the lands were afterwards sold, the biddings opened, and sales confirmed February 27, 1874, and titles divested and vested.

In February, 1875, an order of reference was made to the clerk to take proof and report what claims against the estate had been paid, the amount paid, to whom paid, and whether said claims were valid and owing; what claims filed with the administrator are unpaid, when due and amount. On March 29, 1876, the clerk was again ordered to take proof and report what debts had been paid by the administrator, whether the same have been reported upon heretofore or not, and what debts are still unpaid. On the 22d of November, 1877, the clerk was directed to report what debts had been reported as paid which had not been paid. Under this last order, the clerk reported that two claims, one of $100 and the other of $18.25 had not been paid, although the administrator had received credit therefor in his settlement with the county court clerk. This report, not being excepted to, was confirmed by a decree of March 27, 1878, and the two claims ordered to be paid. In the meantime, judgments had been taken on sale notes, some of the lands resold, and other lands sold, and sales confirmed. An anditional fee to the solicitors of the administrator of $250 was also allowed. Nothing more seems to have been done until November 29, 1883, when the death of the administrator was suggested and proved, and the cause revived in the name of E. G. Ridgely as administrator *de bonis non* of R. K. Porter. Scott Bennett having intermarried with Mary, one of the heirs, was allowed to become a defendant. And the guardian *ad litem* was permitted to resign, and a new guardian was appointed. The transcript

shows no further step in the cause until the suing out of the writ of error.

The decrees confirming the sales of the lands descended were final decrees from which an appeal or writ of error would lie. The proceedings necessary to effect and perfect these sales have been fairly well attended to. All the other orders and decrees, especially those made upon further directions, have been obeyed loosely or not at all. And we do not find any order for the payment of the proceeds of the sales of the lands, unless it be for the fees of the solicitor of the administrator and the guardian *ad litem,* and of the two small claims reported as unpaid although the administrator had received credit for their payment in his settlement with the county court. There has been no settlement of the administrator's accounts in the circuit court, nor any final disposition of the funds in the control of the court.

The first and most material point to be considered is whether the proceedings have been sufficiently regular to render the sales of the land valid upon a direct appeal. The administrator was authorized by the statute to file a petition or bill for the sale of the lands of the estate to pay debts. The heirs of the intestate were regularly made parties defendant to both the original and amended bills, and served with process under each. The court, therefore, had jurisdiction of the subject-matter and the parties. But the proceedings have been marked with many irregularities.

Several particular errors are relied on for reversal. The order appointing the guardian *ad litem* under the

original petition did not contain the name of Mary Porter, one of the heirs, and there was no order of appointment under the amended and supplemental bill. The answer of the guardian *ad litem,* moreover, is not sworn to. The circuit court being a court of general or superior jurisdiction, every presumption is in favor of the regularity of its proceedings, although in the particular case the jurisdiction be statutory if conferred by a statute of a general nature: *McGavock* v. *Bell,* 3 Cold., 512; *Kilcrease* v. *Blythe,* 6 Hum., 378. In a court of inferior jurisdiction, if the right of the guardian *ad litem* to act turn exclusively upon the order of appointment, the order ought perhaps to name the infants: *Rucker* v. *Rucker,* 1 Heis., 726. But even in such case the defect might be cured by the recognition of the guardian by the court. In this case, the petition, which was sworn to, states that all the heirs of the intestate are infants. The answer of the infants, which is filed by the guardian *ad litem,* is in the name of all of them, and both the first decree under the original petition settling rights, and the first decree of the same character under the amended and supplemental petition, expressly recites that the cause was heard upon the answer of the infants by their guardian *ad litem,* thereby recognizing the guardian as the guardian of all of them. A renewal of the order of appointment under the amended petition would have been a mere form. If the answer had undertaken to state facts, or make admissions, it should have been under oath, but the answer was merely formal, stating that the infants did not know how

the facts were, and submitting · their rights to the protection of the court. An oath could have added nothing to such an answer. Even the failure of the record to show the appointment of the guardian *ad litem*, would not be fatal on a direct appeal, where the court is shown in its decrees to have recognized the guardian as the proper representative of the infant: *Bank of Linnville* v. *Leftwick*, 9 Baxt., 471. The irregularities mentioned are, therefore, not sufficient to authorize a reversal of the decrees. And there is nothing in the objection that the lands descended could not be sold for the costs and expenses of the administration. For the administrator being specially authorized to institute the proceedings to prevent the accumulation of costs, would be entitled to be reimbursed his necessary costs and expenses, and the counsel employed would be subrogated to his rights in this behalf.

These are the only specific errors assigned by the counsel of the appellants for reversal. There is a general allegation that the sales were void even in a. collateral attack. But if the court had jurisdiction of the subject-matter and the parties, mere irregularities in the exercise of that jurisdiction would not render the sales void. The case made in the pleadings and decree can alone be looked to in testing the jurisdiction: *Kindell* v. *Titus*, 9 Heis., 727, 736. The act of 1827, brought into the Code section 2267, *et seq.*, does not require the creditors of the estate to be made parties to the suit: *Vance* v. *Saunders*, 9 Baxt., 294. It is enough if the debts are con-

·ceded to be valid in the bill, or subsequently by the administrator: *Id.* The act does not require a report of debts or assets as a preliminary to the exercise of ·jurisdiction: *Kindell* v. *Titus,* 9 Heis., 727, ·738. Nor is it any objection that upon taking an account with the administrator he may be found to have personal assets in·his hands: *Dallas* v. *Read,* 6 Yer., 53. And premature action may be validated by a failure' to appeal, and subsequent· recognition by the court of what was done, when the defect no longer existed. If the proceedings are not void, mere irregularities will not affect the title of innocent third persons who became purchasers under the decrees. Code, sec. 3186. And the court would not reverse the decrees for such errors so as to cloud the rights ·of purchasers: *Lewis* v. *Baker,* 1 Head, 386.·

The record does not show any regular settlement with the administrator of his receipts and disbursement, nor any accurate account of the debts of the estate, or the payments made thereon, out. of what funds, and by whom, although ordered. Nor does it appear that the clerk has been ordered to disburse, ·or has legally disbursed funds which came to his hands from the sales of the realty. The cause will, therefore, be remanded for the execution of the orders of reference, and for such further orders and decrees ·as may be necessary to adjust the rights of the infants in the funds realized from the sale of the lands.

The judgments and decrees of the circuit court will therefore be affirmed, and the cause remanded for the purposes specified above. The appellants will pay the costs of this court.